No. 79–427.   BERKEY PHOTO, INC. *v.* EASTMAN KODAK CO.; and

No. 79–499.   EASTMAN KODAK CO. *v.* BERKEY PHOTO, INC. C. A. 2d Cir.   Certiorari denied.   MR. JUSTICE BLACKMUN would grant certiorari and set cases for oral argument.   Reported below: 603 F. 2d 263.

MR. JUSTICE REHNQUIST, with whom MR. JUSTICE POWELL joins, dissenting.

An obviously carefully considered opinion of the Court of Appeals comprising 99 pages in a separate appendix to the petition for certiorari in this case, dealing as it does with the complexities, refinements, and contradictions embodied in the decisional law construing §§ 1 and 2 of the Sherman Act is obviously not an attractive candidate for review under our discretionary certiorari jurisdiction.   Nonetheless, I do not

think we may "let this cup pass from us" unless we are prepared to forgo the opportunity to review some propositions enunciated by the Court of Appeals in this case which strike me as little less than bizarre.

One of the principal issues decided by the Court of Appeals was the obligation of respondent and cross-petitioner Kodak to "predisclose" information about its camera and film system to competing camera manufacturers prior to offering such camera and film for sale to the public. As to the camera market issues, the Court of Appeals held that Kodak had no such obligation, but as to the photofinishing and photofinishing equipment markets, the Court of Appeals held that Kodak violated § 2 of the Sherman Act by using its market power over films and cameras to obtain a competitive advantage with respect to photofinishing and photofinishing equipment. 603 F. 2d 263, 279–285, 304. And as to the joint development project, the court held that Kodak violated § 1 of the Sherman Act by including in the agreement a nondisclosure provision, even though Kodak made an investment of millions of dollars in the project that presumably was essential to its success.

To one not schooled in the niceties of antitrust litigation, the notion that a statute designed to foster competition requires one competitor to disclose to another, in advance of marketing a product to the general public, its plan to introduce the new product, is difficult to fathom. And this Court has held as recently as *United States* v. *Grinnell Corp.*, 384 U. S. 563 (1966), that it is not a violation of § 2 of the Sherman Act for a business with monopoly power to achieve "growth or development as a consequence of a superior product, business acumen, or historic accident." 384 U. S., at 570–571. I should think this reasoning is equally applicable to the alleged violation of § 1 of the Sherman Act which the Court of Appeals also dealt with in its opinion.

But the Court of Appeals in this case held that "the rule of *Grinnell* must be read together with the teaching of *Griffith* [*United States* v. *Griffith*, 334 U. S. 100, 107 (1948)], that the mere existence of monopoly power 'whether lawfully or unlawfully acquired,' is in itself violative of § 2, 'provided it is coupled with the purpose or intent to exercise that power,'" 603 F. 2d, at 274, even though this Court in *Grinnell* did not express a similar limitation on its holding.

One can understand the exasperation revealed by the statement in the opinion of the Court of Appeals that "[d]espite the daunting complexity of the case—the exhibits numbered in the thousands—Kodak demanded a jury." *Id.*, at 268. The trial lasted from July 1977 until March 1978, and since Kodak is entitled as a matter of constitutional right under the Seventh Amendment to demand a jury trial in a case such as this, perhaps the "daunting complexity" of the case—and presumably many other similar cases being litigated in other federal courts—suggests that either the forest is being lost sight of because of the trees, or that an Act of Congress has been battered, tortured, and encrusted with layer after layer of refinement not required by any necessary construction of the Act, but by the results wrought by a century of case-by-case adjudication of it in this Court and other federal courts.

If the Sherman Act requires "predisclosure" by one competitor to another before a new product can be marketed, I think that the raised eyebrows resulting from such a holding should come from this Court, and not from extrapolations by other federal courts of the decisions of this Court interpreting the Sherman Act. I likewise think that the conclusion of the Court of Appeals that significant parts of a defendant's conduct which take place before the statute of limitations period may nonetheless be introduced in evidence is open to serious question under our prior cases.

So long as there are institutes for federal judges concerning the management of complex cases, and judicial panels for

handling multidistrict litigation, this Court cannot remain wholly above the battle. In this case, it is conceded that the claimed antitrust violations all arise directly from Kodak's competitive superiority and technological innovation leading to the development of new products that consumers consider to be desirable. Because I believe that all three of these violations are interrelated, I would grant the petitions for certiorari and limit the questions as follows: (1) Was Kodak's introduction of the 110 camera and Kodacolor II film system either an attempt to monopolize or actual monopolization of the camera market in violation of § 2 of the Sherman Act? (2) Did Kodak violate § 2 of the Sherman Act by impermissibly using its film monopoly as "leverage" to enhance its position in the photofinishing and photofinishing equipment markets? And (3) did Kodak's joint development agreements with General Electric and Sylvania violate § 1 of the Sherman Act? I would also grant certiorari on this question raised in the conditional cross-petition: "Did the court of appeals err in not entering judgment for Kodak on the film and color print paper claims, and instead remanding both claims for a determination of whether 'conduct occurring many years before the commencement of suit contributed to an overcharge . . . within the limitations period'?"